**Ronald D. AIKEN, Plaintiff–Appellant,**

v.

**POLICY MANAGEMENT SYSTEMS CORPORATION, Defendant–Appellee.**

No. 92–2257.

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1993.

Decided Dec. 30, 1993.

---

**OPINION**

**PER CURIAM:**

Plaintiff Ronald D. Aiken (Aiken) appeals from the district court's grant of summary judgment in favor of Policy Management Systems Corporation (PMSC) on Aiken's claim under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, for retirement benefits under PMSC's Employee Benefits Plan (the Plan). Aiken based his claim for benefits on a provision· in PMSC's Summary Plan Description (SPD) that, on its face, entitled Aiken ·to a lump-sum distribution of his vested benefits. PMSC denied his claim, however, because the terms of the Plan itself differed from the SPD and did not provide for such a distribution. On cross-motions for summary judgment, the district court· concluded that the terms of the Plan controlled over those of the SPD and dismissed Aiken's claim. It alternatively found that even if the SPD controlled, Aiken was not entitled to recover because he had failed to demonstrate reliance on the SPD or prejudice resulting therefrom. We conclude that the district court erred in holding that the Plan controlled over the SPD. We also find that the case was not ripe for summary judgment. As a result, we reverse the district court's dismissal of Aiken's claim and remand the case for further development of the record.

**I.**

On July 19, 1989, Aiken resigned from his position at PMSC under protest after being confronted with allegations of sexual harassment. PMSC had offered Aiken the opportunity to resign in lieu of being involuntarily terminated. In his letter of resignation, Aiken requested a lump-sum distribution of the funds in his pension account based on certain provisions in the Plan's SPD. Aiken testified at his deposition that he decided to choose resignation because he believed that when he resigned he would be immediately entitled to the money in his pension account.[1] In an

Paul Allen Dominick, Nexsen, Pruet, Jacobs, Pollard & Robinson, Charleston, SC, argued (R. Kent Porth, on brief), for plaintiff-appellant.

David Eidson Dukes, Nelson, Mullins, Riley & Scarborough, Columbia, SC, argued (J. Mark Jones, William C. Wood, Jr., on brief), for defendant-appellee.

Before RUSSELL and WIDENER, Circuit Judges, and CLARKE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

---

1. In response to the question "How would you have been able to oppose the allegations against you?", Aiken responded,

    Well, again, there possibly could have been a number of things. Exactly what I would have done if that case would have presented itself, I don't know. The case did not present itself. *I thought I was entitled to my money. The clause was clear and concise. If I would have been told something different, there would have been*

affidavit, Aiken identified the SPD as the source of that belief. Joint App. at 58. The specific provision in the SPD upon which Aiken based his claim stated that "if a participant terminates employment after completing 20 years of service but before attaining age 60, the participant is entitled to distribution of the vested interest in the Plan." [2] At the time of his resignation, Aiken was not yet 60 years of age and had served with PMSC for more than 20 years. Aiken also contends that Gilbert D. Johnson, the manager of Personnel Resources and Development at PMSC, agreed to process Aiken's claim for benefits. Joint App. at 69(a).

On April 25, 1989, PMSC denied Aiken's claim for benefits. PMSC acknowledged the statement in the SPD, but asserted that the official Plan document provided that distribution of vested benefits under the applicable provision only occurred "upon satisfaction of said age requirement." PMSC therefore contended that Aiken was not entitled to his benefits until he turned 60. PMSC also relied on a disclaimer in the Plan that provided that the terms of the official Plan document controlled inconsistent terms in the SPD.

By amended complaint dated August 30, 1991, Aiken filed this suit seeking payment of a lump-sum distribution of his vested pension benefits in the Plan. After discovery, both parties filed motions for summary judgment. By order dated September 3, 1992, the district court granted PMSC's motion for summary judgment and denied Aiken's motion. Relying on *De Nobel v. Vitro Corp.*, 885 F.2d 1180 (4th Cir.1989), the district court concluded that because of the disclaimer in the SPD, the Plan controlled over the SPD. The district court also ruled that even if the SPD

controlled, Aiken had failed to demonstrate reliance on the SPD and prejudice therefrom, and therefore was not entitled to benefits.

## II.

■ Aiken first contends that the district court erred in holding that the terms of the Plan controlled his benefits determination instead of the representations in the SPD. As this case comes to us on review of the district court's summary judgment ruling, we review that conclusion *de novo*. *Foster v. Federal Emergency Management Agency*, 984 F.2d 128, 130 (4th Cir.1993). We believe Aiken is correct: under controlling precedent in this Circuit, representations in a SPD control over inconsistent provisions in an official plan document.

In *Pierce v. Security Trust Life Ins. Co.*, 979 F.2d 23 (4th Cir.1992), this Court recognized that the SPD is "the statutorily established means of informing participants of the terms of the plan and its benefits," and the "employee's primary source of information regarding employment benefits." *Id.* at 27. We noted that the logical import of the status of the SPD was that "if there was a conflict between the complexities of the plan's language and the simple language of the SPD, the latter would control." *Id.; accord Heidgerd v. Olin Corp.*, 906 F.2d 903 (2d Cir. 1990); *Hansen v. Continental Ins. Co.*, 940 F.2d 971 (5th Cir.1991); *Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134 (6th Cir.1988); *McKnight v. Southern Life & Health Ins. Co.*, 758 F.2d 1566 (11th Cir. 1985)); *Fuller v. CBT Corp.*, 905 F.2d 1055,

---

*some other action taken.* Exactly what it would have been, I would have to confer with counsel to determine that.
Joint App. at 68–69 (emphasis added).

2. The section in question in PMSC's SPD stated:
A participant would generally receive distributions from the Plan of all account amounts at the time of:
A. retirement B. total and permanent disability C. death (payment to beneficiary)
Normal retirement is age 65. If a participant is employed by the Company on the date of normal retirement, the participant will become 100% vested in the Plan. The Company may request and the participant may agree to work

past normal retirement. The participant would then continue in the Plan at 100% vested interest until such date delayed retirement occurs. A participant may take early retirement after age 60 and the completion of 20 years of service or upon completion of 25 years of service without regard to participant's age. *If a participant terminates employment after completing 20 years of service but before attaining age 60, the participant is entitled to distribution of the vested interest in the Plan.* The participant may elect to defer the distribution until normal retirement age.
Joint App. at 33–34 (emphasis added).

1060 (7th Cir.1990) ("In the event of a conflict between the handbook and plan, the former may trump—clearly so, when it is the employee relying on the handbook, for it is hardly realistic to expect him to read further."). *Pierce* therefore requires us to find that the district court erred in holding that the Plan controlled over the SPD.[3]

Perhaps anticipating our decision, the district court made an alternate holding. Relying on *Govoni v. Bricklayers, Masons & Plasterers Int'l Union, Local No. 5 Pension Fund,* 732 F.2d 250 (1st Cir.1984), it determined that if the SPD controlled over the Plan, Aiken had to prove reliance on the SPD and resulting prejudice in order to recover. The court found that Aiken had failed to demonstrate reliance and prejudice because under its construction of Aiken's reading of the SPD, he would have been entitled to benefits regardless of whether he resigned or was fired. Therefore, the district court reasoned, Aiken suffered no prejudice as a result of choosing resignation over termination and granted summary judgment in favor of PMSC.

■ We believe that the district court was correct in its decision to apply *Govoni.* The district court was incorrect, however, in its interpretation of what *Govoni* requires an ERISA claimant to show. "[T]o secure relief, [the claimant] must show some significant reliance upon, *or* possible prejudice flowing from, the faulty plan description." *Govoni,* 732 F.2d at 252 (emphasis added); see also *Pierce,* 979 F.2d at 26 (quoting same passage from *Govoni* ).[4] We adopt *Govoni* 's disjunctive construction as our own. The issue in this appeal, then, is whether summary judgment was appropriately granted.

In the *de novo* review of a district court's grant of summary judgment, this Court views the inferences to be drawn from the facts in the light most favorable to the non-moving party. *Moore v. Winebrenner,* 927 F.2d 1312, 1313 (4th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991). The district court's inquiry "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The district court's function at the summary judgment stage "is not [it]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511. On motion for summary judgment, the movant initially bears the burden of demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs,* 945 F.2d 716, 718 (4th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992). Upon that showing, the burden shifts to the non-moving party to produce facts sufficient to create a triable issue of fact. *Id.* at 718–19. "Summary judgment may only be entered after 'adequate time for discovery.'" *Id.* (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).

■ In this case, Aiken first contends that he relied on the SPD in making his decision to resign. Specifically, Aiken asserts that the immediate availability of his retirement benefits, as well as the company's promise to help expedite his benefits application, motivated him to resign. We cannot say at the summary judgment stage of this litigation that Aiken did not actually rely on his belief, based on the SPD, that he was entitled to immediate benefits. Nor can we say that the issue of reliance could not reasonably be

---

3. Unfortunately for the district court, although we decided *Pierce* on July 2, 1992, the decision was originally unpublished. The case was not officially published until after the district court's summary judgment ruling on August 31, 1992.

4. In *Pierce* we stated in one part of the opinion that *Govoni* requires a finding of reliance *and* prejudice. See *Pierce,* 979 F.2d at 30. However,

we did not intend to invoke a conjunctive construction of the reliance or prejudice test. The "and" in the test appears in only one place in the opinion, and in light of the other times that *Govoni* is correctly quoted or applied in *Pierce* as establishing a disjunctive test, 979 F.2d at 26 & 30, it is clear that we intended to adopt the disjunctive test.

resolved in his favor. The SPD states that "[i]f a participant terminates employment after completing 20 years of service but before attaining age 60, the participant is entitled to distribution of the vested interest in the Plan." Joint App. at 34. The reasonable reading of this sentence is that when an employee like Aiken, with 20 years of service and under age 60, resigns, he is entitled to immediate benefits. Therefore, it was error for the district court to enter summary judgment against Aiken.

As for prejudice, the district court's finding of no prejudice was bound up with its discussion of whether Aiken could have relied on his reading of the SPD and the fact that the district court felt he would have been fired regardless. If the district court does not find reliance on remand, the district court must then make a separate factual finding on the prejudice issue. If the district court finds reliance, that, of course, is the end of the inquiry under the reliance or prejudice standard.

We believe that the case was not ripe for summary judgment. In light of the fact that *Pierce* had not yet illuminated the importance of reliance or prejudice during the preparation of this case, however, it is understandable that the record was not fully developed. Therefore, we reverse the district court and remand the case for further development of the record on the issue of reliance or prejudice, consistent with this opinion.

*REVERSED AND REMANDED WITH INSTRUCTIONS.*